## In the matter of the petition of MARIA STAFFORD.

Where a trustee deposits the funds of the trust estate in a bank, in his own name individually, and not as trustee, and with his own private funds, he thereby becomes the debtor of the estate, and the creditor of the bank; and in case the trust funds are lost, through the insolvency of the bank, the loss will fall upon the trustee.

It is a well settled principle of equity, that trust funds are to be kept separate from the private funds of the trustee; and if mingled with his own, he may be charged with such funds, as being himself the borrower.

On the 20th of March, 1851, an order was made appointing Gilbert L. Wilson, Esq., a referee in this matter, with directions to inquire and report in relation to certain matters, and, among other things, to take and pass the accounts of Albert D. Robinson, as master and receiver of the estate of the late James Gibbons, deceased, the husband, in his lifetime, of Esther Gibbons.

In pursuance of this order the referee reported, on the 11th of August, 1851, that he had stated the accounts mentioned in the order, and that the balance remaining in the hands of the master and receiver, was $320,86. Upon the accounting, Mr. Robinson claimed to be allowed the sum of $265,73, for money of the estate deposited by him in the Canal Bank of Albany, and lost through the insolvency of the bank. It appeared that he had deposited the funds of the estate in that bank, in his own name individually, and not as master or receiver, and with his own individual funds—that when the bank failed, there was a balance in the bank standing to the credit of Mr. Robinson to the amount of $497.68, of which, $369,65, belonged to the estate, and $128,03, to him individually—that since the failure of the bank he had received a dividend of $74,65, which he had credited to the estate. He also consented to be charged with a further dividend of $29,52. The counsel for the committee insisted that the master and receiver should not be credited with this item, and also objected to the allowance of $57, charged for drawing and engrossing the final report of the master and receiver. Both these items were al-

lowed by the referee, and to so much of the report the counsel for the committee excepted.

*J Lansing*, for the committee.

*A. D. Robinson*, in person.

HARRIS, J. When a bank receives from its customer his money, and passes the same to his credit, it is called a deposit, but, in legal effect, it is a loan. The bank credits the amount to the depositor, as a debt which it owes him. Nothing short of payment will absolve the bank from the obligation it assumes. (*Commercial . Bank of Albany* v. *Hughes*, 17 *Wend.* 94.) Robinson, therefore, must be regarded as having loaned the money in question to the bank. If he had made the deposit to the credit of the estate, then probably, the loss sustained through the insolvency of the bank, would have fallen upon the estate, and not upon him. But, by depositing the funds of the estate with his own individual funds, to his own credit individually, I think he became the debtor of the estate, and the creditor of the bank, to the amount so deposited. It was, in effect, a loan, not as receiver, but on his own individual account. Had he owed the bank, it might have insisted upon an offset of the debt against the deposit, nor would it have availed the receiver to show that the funds deposited were really not his own, but those of the estate. (*Utica Ins. Co.* v. *Lynch*, 11 *Paige*, 520.)

The question, in this case, is to be determined upon the same principles as other cases of trust. The receiver was, in fact, a trustee, and is entitled to the same protection, and subject to the same liabilities as other trustees. I understand it to be a general rule, applicable to all persons standing in that relation, whether they be receivers, guardians, executors or administrators, or trustees of any other description, that so long as they keep themselves strictly within the line of duty, and exercise reasonable care and diligence, they can not be made responsible for any loss or depreciation of the fund intrusted to them; but if they do not strictly pursue that line, and a loss ensue, they

In the matter of Stafford.

are liable to make that loss good, although such loss may have been wholly unexpected, and little likely to have happened from the course pursued, and although the conduct of the trustee had been entirely free from any improper motive. If this rule be applicable to the case in hand, and I am unable to see why it is not, it is clear the receiver must himself bear the loss which he seeks to charge upon the estate. Instead of depositing the funds to the credit of the estate, separately, he mingled them with his own, and involved them in a general account of debtor and creditor between himself and the bank. It may be assumed that he was actuated by no improper motive. He did not suppose it possible that any one could be injured by thus disposing of the funds. The same would have been equally true, had he loaned them temporarily to a friend, in whose honesty and responsibility he had confidence. Yet it would not be pretended that, in such a case, he could escape liability for any loss which might occur, though equally unexpected, as in this case. He would have been liable in that case, as he is in this, upon the ground that in the management of the funds he had allowed himself to pass beyond the line of his duty.

I regret to find myself brought to this conclusion. There can be no doubt that Mr. Robinson has acted in entire good faith; nor is there any reason to believe that the estate has really suffered by the course he has pursued. It seems severe, under such circumstances, to charge him with the loss. But, though it operate severely in this particular instance, is it not better, than that a well settled and salutary principle should be violated? Courts of equity have laid down certain rules as the result of long experience, by which those having the management of trust funds are to be guided, if they would protect themselves from personal responsibility. Prominent among them is the principle that such funds are to be kept separate from the private funds of the trustee, and, if mingled with his own, he may be charged with such funds, as being himself the borrower.

This exception to the report must, therefore, be allowed, and there must be added to the amount reported by the referee to be due from Mr. Robinson, the sum of $265,73, being the net

amount of the credit allowed to him by the referee on account of the Canal Bank deposit.

In respect to the item of $57, there are no facts before me from which I am able to determine whether that amount was or was not properly allowed by the master. That exception must, therefore, be disallowed. The report, amended as above, must be confirmed.

[ALBANY SPECIAL TERM, July 7, 1851. *Harris*, Justice.]