## WILLIAM E. COFFIN v. JOHN W. BRAMLITT, Guardian.

1. GUARDIAN AND WARD: CONCLUSIVENESS OF ANNUAL ACCOUNTS: CANNOT BE IMPEACHED BY PAROL.— Annual accounts of guardians are conclusive against them in the court where rendered, and can only be set aside by due course of procedure; inaccuracies in such accounts, arising from inadvertence, oversight, miscalculation, or palpable mistake, may, in proper cases, be corrected in the court where returned; but when a guardian states the balance against him in dollars and cents, he cannot impeach it by showing that the balance was money collected in the depreciated issues of broken or suspended banks, or Confederate money, or invested in Confederate bonds.    10 S. & M. 404; 33 Miss. 553; 35 ib. 54; 41 ib. 411.

2. SAME: GUARDIAN WHEN LIABLE FOR INVESTING IN DEPRECIATED CURRENCY.— A guardian who takes the par funds of his ward at interest, and subsequently loans out the same to be repaid in a currency which, at the time, was greatly depreciated and daily diminishing in value with great rapidity, and the loan turns out to be subsequently worthless, is responsible for the loss.

3. SAME: LIABILITY FOR DEPRECIATED CURRENCY TAKEN IN DUE COURSE OF BUSINESS.— A guardian, acting in good faith, with a due regard to the interest of his ward, receiving in the usual course of business paper money, the circulating medium at the time, which should afterwards depreciate and become worthless, would not be chargeable with the loss.

4. SAME: INVESTMENT OR LOAN WITHOUT AUTHORITY OF PROBATE COURT.— A guardian, assuming to invest or loan out the money of his ward without the authority of the Probate Court, takes the risk, and in the event of loss is liable.

5. SAME: LIABILITY FOR INTEREST.— A guardian is not liable for interest on money of his ward in his hands, unless he has consented to take it at interest, or it has been loaned out under the direction of the court, or he uses it himself.    5 S. & M. 422.

6. GUARDIANS AND OTHER TRUSTEES: LIABILITY OF, IN GENERAL.— Guardians, executors, administrators, and other trustees, so long as they keep themselves within the line of their duty, and exercise reasonable care and diligence, cannot be made responsible for any loss or depreciation in the fund intrusted to them; if they do not strictly pursue their line of duty, and a loss ensues, they are liable, though such loss was totally unexpected and unavoidable.

7. SAME: TRUST FUNDS MUST BE DEPOSITED AND LOANED AS TRUST FUNDS, AND KEPT SEPARATE FROM OTHER FUNDS.— A trustee, who mingles trust funds with his own, thereby becomes the debtor to such fund; if he deposit the same in bank in his own name, and the funds are lost through the insolvency of the bank, the loss will fall upon the trustee; so an investment of trust funds in stocks in the name of the trustee is a breach of the trust. 11 Barb. 353; 30 Penn. 536; 8 Barr, 432; Tiffany & Bullard on Trusts and Trustees, 582.

8. SAME: CASE IN JUDGMENT.— B., guardian of C., invested money of his ward in Confederate bonds without the authority of the Probate Court, and took the bonds in his own name. Held — That B. was liable for the amount so invested.

APPEAL from the Probate Court of Pontotoc county. Hon. John S. Neely, judge.

At the December Term, 1858, appellee was appointed guardian of appellant, by the Probate Court of Pontotoc county. At the December Term, 1859, appellee filed his first annual account, which showed balance due ward of $469.69¼. The account was examined and allowed.

The second annual account was filed February, 1860, and was allowed by the court. The guardian charges himself with eight per cent interest on balance reported in first annual account, and after deducting disbursements and charging himself with money received, states balance due ward $420.78. Reports disposition of ward's property for the year 1860.

The third annual account, filed February Term, 1861, is as follows:

"Wm. E. Coffin, in account with Jno. W. Bramlitt, guardian.

| | | |
|---|---:|---:|
| Amount brought forward from second annual account | $420 | 78 |
| Your part of your brother Jack's estate | 198 | 92 |
| | $619 | 70 |
| Deduct disbursements | 129 | 24 |
| | $490 | 46 |

William E. Coffin *v.* John W. Bramlitt, Guardian.

| | | |
|---|---:|---:|
| Brought forward | $490 | 46 |
| Interest for twelve months, 8 per cent | 39 | $25\frac{1}{2}$ |
| | $529 | $69\frac{1}{2}$ |
| To amount of note collected | 90 | 00 |
| | $619 | $69\frac{1}{2}$ |
| By overcharge in last account | 20' | 47 |
| | $599 | $22\frac{1}{2}$ " |

This account was allowed by the court.

Fourth annual account, filed February, 1862, and subsequently allowed by the court:

| | | |
|---|---:|---:|
| "Balance on hand | $599 | $22\frac{1}{2}$ |
| Deduct disbursements | 46 | 44 |
| | $552 | $78\frac{1}{2}$ |
| Interest for twelve months | 44 | 22 |
| | $597 | $00\frac{1}{2}$ " |

Fifth annual account, filed February, 1863, and allowed:

| | | |
|---|---:|---:|
| "Balance on hand | $597 | 00 |
| Deduct disbursements | 42 | 38 |
| | $554 | 62 |
| Interest, 8 per cent | 44 | 32 |
| | $598 | 94 " |

Sixth annual account, filed February, 1864, and allowed:

| | | |
|---|---:|---:|
| "Amount from last settlement | $598 | 94 |
| "    received from sundry notes | 172 | 50 |
| | $771 | 44 |
| Deduct expenses | 12 | 98 |
| | $758 | 46 |

"Your money loaned to C. W. Martin, 1st of April, 1863, at ten per cent, to be paid in Confederate money."

The decree allowing the sixth annual account recites, "that it appearing to the court that said account is in all things correct, it is ordered by the court that said account, showing a balance in the hands of said guardian due said ward of $758.46, be allowed and duly recorded."

Seventh annual account, filed 14th March, 1865:

"J. W. Bramlitt, Guardian, Dr.

| | |
|---|---:|
| To balance on hand 9th February, 1864 | $758 46 |
| Interest collected from C. W. Martin, March 1st, 1864 | 37 70 |
| This amount bonded in 4 per cent Confederate bonds, March 29, 1864 | $796 16 |
| Cash received from Mrs. F., 1864 | 150 00 |
| Cr. | $946 16 |
| By sundry disbursements | 106 50 |
| | $839 66" |

No order appears of record allowing this account.

Eighth annual account, filed March, 1866:

| | |
|---|---:|
| "To amount on hand March 10, 1865 | $839 66 |
| Deduct expense account for 1865 | 25 00 |
| This amount in Confederate bonds, bonded 29th March, 1864 | $814 66" |

Attached to this account is a petition, in substance as follows: That petitioner in last account charged himself with the sum of $839.66, for and on account of his said ward, which amount was received in "due course of business" in Confederate money. That he was responsible for eight per cent interest, and was compelled to loan out the money in his hands to

responsible parties. That he was compelled to collect in Confederate money, and that the amount specified was in his hands in " Old Issue " at the time he was required to fund the same in 4 per cent Confederate bonds, by a law of the Confederate Congress, and to prevent the loss, he deposited the sum mentioned for investment in Confederate bonds. That the certificate of deposit by the failure of the Confederacy has become worthless, and asks to be relieved from liability for the amount stated. That he has been guilty of no neglect, and the loss to his ward results from the condition of the country.

The account was allowed by the court, and ordered to be recorded.

In the ninth annual account, filed April Term, 1867, and allowed, the guardian reports that he has received nothing, and asks for an allowance of the sum of $3.65, amount paid court costs.

Tenth annual and final account, filed March, 1868:

" Guardian, Dr.

| | | | |
|---|---|---:|---:|
| To amount due ward, eighth annual account..... | | $814 | 66 |
| "    "    collected....................... | | 10 | 72 |
| Guardian, Cr........................ | | $825 | 38 |

| | | | | |
|---|---|---:|---:|---:|
| By amount due guardian, ninth account.. | $3 | 65 | | |
| "    "    paid ward................. | 10 | 72 | | |
| " commissions.................... | 35 | 84 | | |
| " amount invested in Confederate bonds, and which became worthless..... | 814 | 66 | 864 | 87 |
| Balance due guardian............... | | | $39 | 49 " |

On the presentation of the foregoing account, on petition of appellee, representing that his ward, appellant, had reached his majority, a citation for appellant was issued, and duly served upon him. Appellant appeared and objected to the allowance of the final account, and filed a number of exceptions thereto, the seventh of which is as follows: " To the allowance of the

sum of $814.66, claimed by guardian in his final account to have been in Confederate money, and to have become worthless on his hands." At the hearing all the exceptions were overruled, except the first. A bill of exceptions was signed, which shows that on the hearing of the exceptions the following testimony, was introduced:

Appellant, W. E. Coffin, testified—That he did not know that his guardian had converted his estate into Confederate money; that he had received during the war some Confederate money from him.

J. W. Bramlitt, appellee—That he had received all the notes of his ward from his former guardian, Mrs. Mattox; that he had collected all so received, except one on Abernathy, who was always insolvent. Collected some of the notes in 1858 and 1859 in par funds, which was expended in support of his ward; that he received from the administrator of Jack Coffin a note on Thomas Mallory, in which his ward had a one-seventh interest; also an order on Mobile for $1000, interest of ward one-seventh, which he collected before the war in par funds. That he collected the Mallory note in 1862 and 1863. That he loaned his ward's money to C. W. Martin, 1st of April, 1863; that the money loaned was Confederate money, and to be repaid in same funds. Never had any gold or silver of his ward's in his hands. Mallory was solvent.

That the bonds of the Confederate government were taken in his own name; that in most other transactions they were made in his own name for his ward's use, or as guardian. The following is a copy of one of the four per cent Confederate bonds in which appellee invested for his ward:

CONFEDERATE STATES OF AMERICA, }
DEPOSITARY'S OFFICE, }
ABERDEEN, MISS., March 29, 1864. }

This will certify that J. W. Bramlitt has paid into this office Eighteen Hundred Dollars, for which amount Registered Bonds of the Confederate States of America, at the rate of four per cent per annum, will be issued to him under the Act of February 17, 1864, upon the surrender of this certificate at this office.

T. W. WILLIAMS,
*Depositary.*

That the note from Martin may have been taken payable to him individually, but told Martin it was his ward's money.

That Mallory owed him personally about $3000, $1500 of which he took in Confederate money, and balance in stock, etc., etc., after surrender.

The final account was referred to a commissioner to re-state. A re-stated account was presented by the commissioner, showing a balance due the guardian of $19.45. This account was filed at the August Term, 1868, and at the October Term was ordered to be allowed and recorded, and the guardian discharged. From this decree the appeal is prosecuted, and the errors assigned are:

1. The action of the court in overruling the exceptions to the final acount.

2. In allowing the re-stated account.

*Harris & Withers*, and *Tucker, Green & Pickens*, for appellant.

The funds of appellant in the hands of Bramlitt, his guardian, on the 1st of April, 1863, were all *par funds ;* and his loan to C. W. Martin, to be repaid in " Confederate money," was worse than folly, and amounted to fraud. Had it been done in good faith, still, having obtained no order of court to that effect, the act would have been void and unlawful. Rev. Code, art. 147, p. 462; *Reynolds* v. *Walker*, 29 Miss. 265. And why did he never return Martin's note in any of his annual accounts? But he charges himself with the $598.94, which he claimed to have loaned Martin, which was confirmed by the court in March, 1864, and which is final and conclusive against him, and cannot be contradicted or explained by parol evidence. *Johnson* v. *Miller*, 33 Miss. 553 ; 35 Miss. 540; *Bailey* v. *Dilworth*, 10 S. & M. 404; *McFarlane* v. *Randle*, 41 Miss. 411; *Adams, administrator*, v. *Westbrook*, ib. 385. At one time he reports having invested $796.16 of his ward's funds in 4 per cent Confederate bonds, and in his eighth annual account he says the amount so invested was $814.66; and in his ninth annual account, after having never

expended a dollar during the year for his ward, he brings him out in his (Bramlitt's) debt! And so the year succeeding.

Bramlitt never had any Confederate money belonging to his ward to fund; he simply appropriated the funds of his ward to his own use. The bonds for $1800 were payable to *him*, Bramlitt, *individually*, as the certificate shows. The whole matter stands thus: Bramlitt was debtor to his ward $814.66, in par funds, and seeks to pay him off by giving him an interest in the $1800 certificate to the extent of the debt — less than one-half of the precious relic! But partnership and joint adventures are prohibited between guardian and ward, and the latter becomes personally liable in such enterprises. *Adams, administrator,* v. *Westbrook, supra;* 2 Story's Equity, § 70; Hill on Trustees, p. 376.

The seventh exception should have been sustained. The Act of 1861 (Session Acts, p. 39) is the only thing that sustains the alleged loan, which is clearly illegal, because it was passed in support and furtherance of the rebellion. The Act of 1865, § 4, p. 143, says currency received in " due course of business ;" and it is not shown that Bramlitt, as such guardian, ever received a dollar in Confederate money in " due course of business ;" nor is it shown that he had any of said currency on hand at the surrender. But this act is clearly invalid so far as it goes to sustain and validate the Act of 1861, above referred to, because it would conflict with public policy and the provisions of the Constitution of the United States.

*G. L. Potter* for appellee.

From the facts in the case, the decree in the court below must be affirmed. It is a settled rule in this State, that the annual accounts of guardians, administrators, etc., are, if duly approved, "*primâ facie* correct, and can only be assailed by proof that they were wrong." *Roach* v. *Jelks,* 40 Miss. 757; *McFarlane* v. *Randle,* 41 Miss. 411; *Austin* v. *Lamar,* 23 Miss. 189; *Heard* v. *Daniel,* 26 Miss. 451. The record does not set forth *all* the evidence introduced at the trial. In the absence of the whole proof, the presumption is that the decree

is correct. . *Terry* v. *Robins*, 5 S. & M. 293; *Wright* v. *Bank of Alabama*, 6 S. & M. 251. The case of *McFarlane* v. *Randle*, *supra*, will be found to differ from this one, wherein the guardian reported the funds in his hands *as cash*, giving no intimation that he held Confederate money; and so parol evidence was held inadmissible that would contradict his annual accounts.

All that is required of a guardian is "common skill," etc. *Vide* 1 Sto. Eq., § 465; *Konigneaber* v. *Rimmel*, 3 Penn. (P. & W.) 207; *Bonsoll's Appeal*, 1 Rawle, 266; *Thompson* v. *Brown*, 4 John. Chan. 619. As to guardians receiving Confederate notes, *vide* Act of Aug. 2, 1861, and further Act of December 20, 1865, which are sustained in *Trotter* v. *Trotter*, 40 Miss. 704. If the acts of the Confederate government, regarding tax sales, would pass title to property so sold, surely the statutes authorizing receipts of their issues must excuse the guardian who took them. *Cassell* v. *Backrack*.

With regard to the issuance of the Confederate bonds to Bramlitt individually, this was done, as shown by the proof, because the "officers" required something which we cannot make out from the transcript; but it suffices that the officers required a something rendering it proper to take the bonds in that form; and so he therein acted for his ward, in compliance with requirements he was bound to observe.

On a petition for a re-argument, which was refused, G. L. Potter, for appellee, presented following points:

The annual accounts of the guardian duly allowed must be sustained, unless the ward can show their incorrectness; they are *prima facie* correct, and can only be assailed by proof that they are wrong. *Heard* v. *Daniel*, 26 Miss. 453; *Austin* v. *Lamar*, 23 Miss. 191; *Roach* v. *Jelks*, 40 Miss. 757; *McFarlane* v. *Randle*, 41 Miss. 411. There is no proof on this point that the court can regard; and where the facts upon which the Probate Court decided "do not appear fully," this court will not interfere. *Crowder* v. *Shackleford*, 35 Miss. 364; *Phipps* v. *Morton,* administrator, 33 Miss. 212; *Terry* v. *Robins,* 5 S. & M. 293; *Wright* v. *Bank of Alabama*, 6 S. & M.

251. Under art. 33, Rev. Code, 431, the *onus probandi* is upon him who attempts to "surcharge and falsify" the account; and a *bill of review* is the proper remedy. 33 Miss. 558. This has not been attempted in this case. The appellant, however, simply "excepts," without saying why, or for what reason. Administrators and guardians are not bound for *specie*, upon their return of so many "dollars," during the late war, when it was everywhere known that there was no currency within the Confederate lines but Confederate money. This was the view taken by Chase, C.J., in the great Virginia R. R. case. Art. 147, p. 461, Revised Code, is not prohibitory, but protective, rather compelling the loan of a ward's money, that it may not remain idle and unprofitable in the guardian's hands, and to relieve the guardian from the rigor of the common-law rule, holding him responsible for interest on the money thus held. *Vide* 2 Kent's Com. 250 (231); Tyler on Infancy and Cov. 261–3; *Field* v. *Scheiffelin*, 7 John. Chan. 154–5. Be this as it may, the *subsequent approval* by the court of loans made without its direction validates them. See: *McFarlane* v. *Randle, supra*. Such loans are thereby *ratified* by the court. *Austin* v. *Lamar*, 23 Miss. 192; *Frelick* v. *Turner*, 26 Miss. 394. So a compromise made by a guardian, and approved by the court, binds the ward. *Dunlap* v. *Petrie, executor*, 35 Miss. 600; and see further on these points.

*Inwood* v. *Twine*, 1 Ambler, 419; Law of Trusts and Trustees (T. & B.), 643–4; *Field* v. *Scheiffelin*, 7 John. Chan. 154. All of the above are precisely in point to this case. We refer also to Acts of August, 1861, commented on in brief of original argument. The investment in Confederate funds was the most judicious, when it is remembered that the currency of the State at the beginning of the war was foreign bank bills, passing current with specie, and could be converted into such at any moment; hence it is quite certain that the guardian had such bills on hand at that time. They were soon displaced by local and Confederate issues, which were paid into the banks; and so it was manifest that these institutions must fail, as they have, if the new currency became worthless. And further, the

issue of the banks might be seized, as they were, by military force; or their solvency might be destroyed by the innumerable vicissitudes and dangers of war. This was an highly probable result, though the Confederacy should prevail, and be able to redeem its issues. As to argument of opposite counsel, about things done generally in " aid of the rebellion," " against public policy," etc., and which are thereby void, we will not comment on. So far as such has any relevancy to this case, the question has been settled in *Trotter* v. *Trotter*, 40 Miss. 704. *Green* v. *Sizer*, 40 Miss. 4553 *et seq.;* *Cassell* v. *Backrack*, 42 Miss. The broad scope of constitutional provisions and political polity do not apply to guardians, but are meant for the government of a nation; while there are established rules of the common law and statutes expressly enacted for the guidance of the guardian and the protection of the ward.

But it may be said the guardian is concluded by his reports. Not so : a party may be bound by an estoppel, if it be pleaded against him; but if his opponent fails to insist on it in the proper mode, the matter of estoppel will not preclude him. Say the evidence respecting the collection in Confederate money should have been excluded ; still this court cannot consider that question, *as no exception was taken on that point.* In the case of *McFarlane* v. *Randle,* *supra,* such exception was taken, and only on this ground did this court examine the question. And if exceptions had been reserved in this case, it could avail the appellant nothing, for he brought out this evidence in his direct examination.

At any event, he waived the objection, and the case should be decided without regard to it. The Act of Dec. 20th, 1865, covers this case, which has been sufficiently commented on in original argument.

PEYTON, J., delivered the opinion of the court.

It appears from the record in this case that the appellee was appointed guardian of the person and estate of the appellant, by the Probate Court of Pontotoc county, at the December Term thereof, 1858, and that he failed to render an inventory of

his ward's estate, which consisted of notes, negro girl, a small interest in land.

That on the 14th day of February, 1859, said guardian filed his first annual account, in which ·he charges himself with a balance on hand in favor of his ward of $469.99¼, which consisted of notes for loaned money received from Mrs. A. C. Mattox, former guardian of said ward, and of a note for $80 for the hire of negro slave Ann, belonging to his ward, for the year 1859.

That at the March Term, 1860, of said Probate Court the said guardian settled his second annual account, exhibiting a balance of $420.78¼ in cash, in favor of his ward, on $309.69, of which he charged himself with interest for the year 1859.

That at the March Term, 1861, of said court the said guardian settled his third annual account, showing a balance due his ward of $599.22½. In this account the guardian charged himself with the balance due his ward· on the last settlement of $420.78, with interest thereon for twelve months, and with his ward's part of his brother Jack's estate.

That said guardian in his fourth annual account charged himself with the balance due his ward on the last annual settlement of $599.22, and interest on the same for twelve months. This account exhibits a balance due the ward of $597, and was approved and allowed by the court, and ordered to be recorded at the March Term of said Probate Court, 1862. And also in his fifth annual account the said guardian charges himself with the balance due his ward on his last annual settlement of $597, and with interest on the same for twelve months. This account was settled at the March Term, 1863, and shows a balance due the ward of $598.94. In his sixth annual account, which was settled at the March Term, 1864, the said guardian charges himself with the balance on the last annual settlement of $598.94, and negro hire and rent amounting to $172.50. From which, after deducting expense account of $12.98, there remained a balance due the ward of $758.46. At the foot of this account is the following: " Your money loaned to C. W.

Martin, 1st of April, 1863, at ten per cent, to be paid in Confederate money."

That the seventh annual account was never settled, and the eighth exhibits upon settlement a balance in favor of the ward of $814.66, which is stated in the account to be "in Confederate bonds, bonded the 29th March, 1864." This account was allowed and ordered to record at the May Term, 1866. And that the ninth annual account, settled at the May Term, 1867, brings the ward in debt to his guardian in the sum of $3.65.

The ward having arrived at age, on the 5th day of March, 1868, said guardian filed his tenth and final account, in which, among other things, he charges himself with $814.66, and prays a credit for the same amount in Confederate money which had become worthless in his hands.

To this account the appellant filed nine exceptions, all of which were overruled by the court, except the first, which was sustained by the court; and the account, as re-stated and allowed by the court, exhibits a balance against the appellant of $19.49.

From the decree of the court in overruling the exceptions and passing the re-stated account, the cause comes here by appeal.

Of the various exceptions to the account which were overruled by the court, we will only notice the seventh.

Upon the settlement of the sixth annual account in the month of March, 1864, the guardian held his ward's money to the amount of $758.46, in par funds. He has so charged himself in that account, and he is not allowed to gainsay it. Where final or annual account of a guardian states the balance against him, as in this instance, in dollars and cents, he cannot impeach or contradict it by proof that the balance stated was money collected in the depreciated issues of broken or suspended banks, or in Confederate money, or that the same was at the time invested in Confederate bonds. Annual accounts of guardians are final and conclusive against them in the court where rendered, and can only be set aside by due course of procedure. Inaccuracies in such accounts arising from sheer inadvertence or oversight, or from palpable mistake or miscalculation, may, in proper cases, be corrected. Where a guardian in

his annual accounts has repeatedly stated the balance due his ward in dollars and cents, it will be regarded as constitutional currency, and he will not be permitted to show by parol testimony that such balances were in Confederate treasury notes or in Confederate bonds. *Bailey* v. *Dilworth,* 10 S. & M. 404; 33 Miss. 553; 35 ib. 540; *Crump* v. *Geroch,* 40 ib.; and *McFarlane* v. *Randle,* 41 ib. 411.

The next question for our consideration is, had the guardian a right to invest his ward's money in Confederate treasury notes or in Confederate bonds without the authority of the Probate Court to do so?

The Rev. Code, 461, art. 147, provides that for no balance of money in his hands on (annual) accounts shall a guardian be charged interest, but the court may direct him to place the same at interest, taking bond with security for the payment thereof, or the guardian may consent to take the same at interest, with the approbation of the court. His accounts show that the guardian did take the money at interest, and kept it until 1863 or 1864, when he says that he loaned it, to be repaid in Confederate money, which was then greatly depreciated, and daily diminishing in value with great rapidity. This fact was notorious in this country, and must have been known to the guardian at the time he loaned the money. Assuming that he had this knowledge, we must say that he was not guarding very cautiously the interest of his ward, when he loaned good money for bad, when he lent the par funds of his ward to be refunded in Confederate treasury notes, which were then of little value, and becoming less valuable every day. The single loan seems to have wiped out nearly the whole of his ward's estate. This transaction cannot be reconciled with the faithful discharge of his duty as guardian, which requires him to carefully guard and promote the interests of his ward.

If a guardian assumes to loan out the money of his ward without the authority of the Probate Court, he does it at his own risk. In this case there was no authority of the court for the loan, nor does there appear to have been any bond or security of any kind for the payment thereof.

The interests of his ward required the guardian should have retained the money in his possession, and this the court would have permitted him to do without interest, upon a proper showing of great hazard of loss of the principal in loaning it, and that he had no use for the money himself; and in this way the money would have been saved to the ward, and the hire of the negro girl, the rent of the land, and the portion he received from his deceased brother's estate, would have defrayed the expenses of the guardianship. This court has decided that a guardian is not chargeable with interest for money in his hands, unless he has consented to take the money at interest, or unless it has been loaned out at interest under the direction of the court, or unless he uses it himself. *Hendricks* v. *Huddleston*, 5 S. & M. 422.

If a guardian, acting in good faith and with a due regard to the interests of his ward, should receive, in the usual course of business, paper money, the circulating medium at the time, which should afterwards depreciate or become worthless in his hands, he would not be chargeable with the loss.

It is a general rule, applicable to all persons standing in the relation of trustee, whether they be receivers, guardians, executors, or administrators, or trustees of any description, that so long as they keep themselves strictly within the line of duty, and exercise reasonable care and diligence, they cannot be made responsible for any loss or depreciation in the fund entrusted to them; but if they do not strictly pursue that line, and a loss ensue, they are liable to make that loss good, although such loss may have been wholly unexpected. If this rule be applied to the case in hand, it is clear the guardian must bear the loss which he seeks to charge upon the estate of his ward. Instead of depositing the funds to the credit of the estate of his ward separately, or in his own name as guardian, he mingles them with his own; and in receiving a certificate for them in his own name, he created the relation of debtor and creditor between himself and the Confederate government. For it is a well-settled principle in equity, that trust funds are to be kept separate from the private funds of the trustee; and if mingled with his own,

he may be charged with such funds, as being himself the borrower.   11 Barb. 353.

Where a trustee deposits the funds of the trust estate in a bank, in his own name individually, and not as trustee, and with his own private funds, he thereby becomes the debtor of the estate, and the creditor of the bank ; and in case the trust funds are lost, through the insolvency of the bank, the loss will fall upon the trustee.   *McCalister* v. *The Commonwealth*, 30 Penn. 536.

It has also been decided that an investment of trust funds in stocks, in the trustee's individual name, was itself a breach of trust.   *Morris* v. *Wallace*, 3 Barr, 319 ; *Stanley's Appeal*, 8 Barr, 432.

As against an attaching creditor of the depositor, the putting the funds in bank in his individual name constitutes the deposit the property of the depositor, whose name it bears, and prevents, from motives of legal policy, an explanation of its true character.   *Jackson* v. *The Bank of The United States*, 10 Barr, 61 ; *Hart* v. *Buckley*, 2 Edwards, ch. 70.

In making a deposit of trust funds, the trustee should be careful to do it to the account of the trust estate, and not to his own account ; for should he deposit the money to his own account, he would render himself liable for it, on the failure of the bank. If the trustee deposits the trust funds in his own name, he mixes them with his own private funds, which always renders him liable in case of loss.   Tiffany & Bullard on Trusts and Trustees, 582.

The appellee, by loaning out the appellant's money for Confederate treasury notes without the authority of the Probate Court, and by depositing the treasury notes in his own name for the purpose of investment in Confederate bonds, has made himself liable for the loss of the appellant's money.

The decree of the court overruling the seventh exception will be reversed, and the cause remanded for further proceedings in accordance with this opinion.