## S. WILLIAMS, Admr., etc., *v.* N. W. CAMPBELL.

1. OBLIGATIONS OF THOSE IN A FIDUCIARY CAPACITY — GENERAL RULE. — The general rule applicable to all acting in a fiduciary capacity is, that so long as they keep themselves within the line of duty, are actuated by good motives, and use ordinary care and diligence, they are not personally chargeable with the loss or depreciation of funds intrusted to them. But, if they assume a discretion, not confided to them, or transcend the authority defining their mode of action, they are (however pure their motives) bound to make good losses which ensue.

2. SAME — ADMINISTRATOR'S LIABILITY — CASE AT BAR.—During the war, the administrator, who had been authorized by the probate court to sell certain drugs belonging to his decedent's estate, on nine months' credit, sold at private sale for Confederate money, cash, and, instead of paying the creditors as he might have done, kept the Confederate money, until, by the close of the war, it became valueless. The sale was *bona fide*, and the property brought its fair value for the times: *Held*, The administrator is chargeable with the value of the Confederate money at the time of sale, and interest.

3. ADMINISTRATOR — HIS RESPONSIBILITY FOR AN UNAUTHORIZED INVESTMENT. — If, contrary to his trust and duty, an administrator invested money of the estate in Confederate bonds, without authority of the probate court, and the bonds became valueless, he is liable for the loss.

4. PROBABLE EFFECT OF CONFIRMATION OF A REPORT OF SALE — PROCEEDINGS TO SET ASIDE THE SALE. — The confirmation of a report of sale is final, in so far as it determines that a sale has been made under a decree of the court, and proceedings to set the sale aside must be by a review in the appellate court or by original proceedings in a court of original jurisdiction.

5. SAME — ADMINISTRATORS — STATUS OF ANNUAL SETTLEMENTS AT THE FINAL ACCOUNT. — At the final settlement, anterior, partial, or annual accounts are only *prima facie* correct, in favor of the administrator, but may be impeached by creditors or distributees either for matters on their face or *de hors* the record.

6. SAME — WHERE A REPORT OF A SALE AND AN ACCOUNT OF WHAT WAS DONE WITH THE MONEY ARE INCLUDED IN ONE PAPER. — A report of a sale is one thing; a statement of how the money has been used is another and a different thing. If both are included in the same report, a confirmation does not preclude creditors from inquiring into the lawfulness of the disposition of the fund. That part of the report is in effect a partial account or settlement, and can only be respected as such on final settlement.

APPEAL from the probate court of De Soto county. SIM-MONS, J.

Appellant was appointed administrator for the estate of D. W. Brooks, by the probate court of De Soto county in November, 1862. At the same term he was authorized "to

sell the perishable property of said estate on a credit of
nine months from the day of sale, after giving ten days'
notice of the time and place of sale, by posting in three pub-
lic places in said county; and he is further ordered to sell
the drugs, publicly or privately, at discretion, and that he
require of the purchasers bond with approved security, and
make return to this court." At the November term, 1865,
he reported the sale of the drugs and jewelry at about
$2,900 and the other personal property at about $200 at pri-
vate sale for Confederate money, which sale was in——,
1863, and the money bonded in 1864. With the report of
sale he returned an inventory of the debts due the estate,
marking opposite each debt good, doubtful or desperate.
At the December term, 1865, the court approved and con-
firmed the sale. In April, 1866, he petitioned the court to
set aside this confirmation on the grounds that the debts had
not been properly classified. On the 19th of April, 1866,
the previous confirmation of sale was set aside, a new
inventory, with proper classification of debt filed, and by
decree of the court the sale and new inventory were
approved. In January, 1867, the administrator filed his
petition to have the estate declared insolvent, and at the
March term, 1867, the estate was declared insolvent, and the
administrator required to sell certain lands. The sale of the
lands was made, reported and confirmed.

Appellee and others proved their claims. In October,
1869, the administrator filed his final account. In Decem-
ber, 1869, appellee and others filed their eight exceptions to
the final account. The first two are in substance the same,
and, except to the administrator's sale of the personal prop-
erty for cash, the court sustained these exceptions, and
charged the administrator with the value of the goods sold
at the time of the sale. This is the only error complained
of, and from this decree, in this respect, Williams appealed.

Many witnesses were examined as to the possibility of
selling goods on credit at the time of this sale; the relative
advantages and disadvantages of public and private sales,

judging from others in the neighborhood at the time; the value of the drugs, the currency of the country, and the possibility, at that time, of selling drugs for greenbacks; and also, as to the circumstances of this sale. The testimony adduced established the conclusions of fact announced in the opinion of the court.

*Walter & Scruggs*, for appellant.

An administrator is only bound to use ordinary diligence, such as a prudent man would use about his own affairs. Barley v. Dilworth, 10 Smedes & Marsh. 404; Gullage v. Berry, 31 Miss. 347; Dunlap v. Petrie, 35 ib. 591.

The probate court could have ordered the goods to be sold at private sale for cash. Rev. Code, 445. We insist that the court in confirming this sale, as it did twice (the latter time upon great deliberation), made it good *ab initio* by relation. It was also good for another reason, namely, that the decree was made, and that no writ of error was prosecuted, and no exception taken for three years thereafter. The heirs before the insolvency was declared had the right to this writ, and after the declaration the creditors had it. Mitchell v. Pease, 29 Miss. 350. A decree confirming a sale of personalty by the probate court is a final decree. Bland v. Muncaster, 24 Miss. 62; Addison v. Eldridge, 1 Smedes & Marsh. 321; West Feliciana R. R. Co. v. Sockett, 27 Miss. 739; Chew v. Smith, 35 ib. 153; Hart v. Hart, 39 ib. 221. A report of sale cannot be set aside by the probate court at a term subsequent to its confirmation. Turnbull v. Endicot, 3 Smedes & Marsh. 302; Powell v. Canby, 4 ib. 86; Harrison v. Moltz, 5 ib. 578; Hendricks v. Huddleston, ib. 422; Harrison v. Moltz, 5 ib. 578; Dahlgreen v. Duncan, 7 ib. 280; Smith v. Chew, 35 Miss. 153. So the report of the allowance of exempt property to the widow, when confirmed, is final. Holliday v. Holland, 41 ib. 528. The court therefore erred in setting aside the decree confirming appellant's report of sale.

The probate court is undoubtedly a court of general juris-

diction on all matters confided to it by the constitution. Gildart's Heirs v. Stark, 1 How. 450; Blanton v. King, 2 ib. 856; Carmichael v. Browder, 3 ib. 352; Root v. McFerrin, 37 Miss. 17. In cases of sale of personal property notice is not necessary to any one. Hutchins v. Brooks, 31 ib. 430; Smith v. Chew, 35 ib. 153. This court has held an administrator not liable for Confederate money collected in good faith. Trotter v. Trotter, 40 ib. 701. On confirmation of a sale of personal property, the title vests in the purchaser. Young v. Thompson, 2·Cald. 596.

*Powel & McKenzie*, for appellee.

Appellee excepted to the final settlement of appellant, because appellant had not charged himself in said final settlement with the proceeds of the sale of certain personal property belonging to the estate of his decedent. The chancellor sustained the exception, and directed the clerk and master to restate the final account, charging appellant with the reasonable value of said personal property at the time of the sale with interest, etc. This is the error complained of.

Was there error in this? Appellee insists that said sale never was approved or confirmed by the court, and, if said sale had been approved by the court, appellant is not thereby discharged from liability. Good faith, prudence and diligence will not protect a trustee from the consequences of unauthorized acts. 4 Barb. 626; 28 Penn. 480. Appellant was directed, under decree of the probate court, to sell the perishable property at public sale upon ten days' notice, with discretion, to sell the drugs at private sale, upon a credit of nine months, taking bond and security. Such sales were usual all over the country, and the property brought a fair price.

The probate court was regularly held until after appellant had made said sale, and was suspended but a short time during the entire war. Appellant made no report of said sale until long after the war closed, and the funds received

by him were worthless. It was his duty, if he desired to sell said property different from the directions of the court, to get authority so to do from the court. See Adams, admr., v. Westbrook, 41 Miss. 385; Coffin v. Bramlet, guardian, 42 ib. 194; also McFarlane v. Randle, ib. 411. If said sale of said personal property had been approved by the court, so far as the receiving of Confederate money by appellant, which we insist was not done, appellees are not bound by said approval. See Pollock, admr., v. Buie, 43 Miss. 140.

SIMRALL, J. :

The administrator was licensed by the probate court to sell the drugs on nine months' credit. Instead of complying with the order of the court, he made a private sale in Confederate money. This occurred in 1863, no report was made until after the war. The proof tends to show, and is perhaps satisfactory on the point, that Williams acted in good faith, and supposed he was doing the best that, under the circumstances, was practicable.

The general rule, applicable to all acting in a fiduciary capacity, including trustees, is, that so long as they keep themselves within the line of duty, are actuated by good motives and use ordinary care and diligence, they are not personally chargeable with the loss or depreciation of funds intrusted to them. But if they assume a discretion not confided to them, or transcend authority defining their mode of action, they are (however pure their motives) bound to make good losses which ensue. Coffin v. Bramlet, 42 Miss. 208, and cases cited.

It follows that, inasmuch as the administrator was guilty of a breach of trust in selling the drugs at private sale for cash, he is accountable to the creditors for a fair, reasonable value in all the circumstances.

By that sale he parted with the goods. The testimony does not impeach the fairness of the price obtained. Considering the unsettled condition of the country at the time, the

risks and dangers to which this sort of property was exposed, as shown by the testimony, and the further fact that the sale was made for Confederate money, then the only currency, which was generally taken for debts, and in the purchase of property, and also the further fact that the administrator was prompted by fair motives, we think that he ought to be charged with the sum realized for the drugs, reduced to the value of United States currency.

The testimony proves the relative value of Confederate money and gold ; and if that be now substituted for currency, we think substantial justice will be done between the administrator and the creditors. He ought to be charged with interest, because he did not apply the Confederate money to pay off creditors as he might have done, and was his duty to have done. The very object of the sale was to obtain money to discharge debts. If that use could be made of it, as the testimony shows, it was manifestly his duty, under the law, to have promptly so applied it. If by holding the money, in violation of his trust and duty, it has perished in his hands, he should bear the loss, and not the creditors. If he invested the money in Confederate bonds without authority of the probate court, he can claim no protection from that act. Coffin v. Bramlet, 10 Smedes & Marsh. 404 ; 33 Miss. 540, 553 ; 41 ib. 411.

The proposition made by the counsel for the appellant is correct, and sustained by the authorities cited, that the confirmation of the report of a sale is final. It is final, in so far as it determines that the sale has been made under a decree of the court. Proceedings to set the sale aside must be by a review in the appellate court, or by original proceedings in a court of original jurisdiction. But how does the principle benefit the appellant? His report was made in 1865, the sale in 1863. He embodies in it, not merely a report proper, but also an inventory of the credits, and an account of the disposition which he had made of the funds. Three separate, distinct elements are embraced, two having no connection with a sale. A confirmation, in so far as the

principle of conclusiveness is concerned, could only take effect upon the sale; as to the other matters of the inventory, and the use and appropriation of the money, both are impeachable on the final settlement. It would be legitimate for the creditors to show that credits were omitted from the inventory or schedule, which were collected, or might have been. So, also, it would be entirely proper, on final settlement, to controvert that matter of the report, which was of the character of an account of the disposition which had been made of the money. A report of a sale is one thing; a statement of how the money had been used is another and different thing. If both are included in the same report, a confirmation does not preclude creditors from inquiring into the lawfulness of the disposition of the fund. That part of the report is, in effect, a partial account or settlement, and can only be respected as such on final settlement. It is well settled, that at the final settlement, these anterior, partial or annual accounts are only *prima facie* correct, in favor of the administrator, but may be impeached by creditors or distributees, either for matter on their face or *de hors*. It is unnecessary to decide whether the rule propounded by appellant's counsel applies to a sale made in violation of the order of the court, and without deriving any sanction from it, is made valid by confirmation or not; since we have reached the conclusion that the price obtained was the fair value of the goods, and the administrator is only chargeable with the value of the Confederate money and interest.

These views dispose of all the material questions in controversy. The final settlement will be made in accordance with these views, which will guide the commissioner in taking the account.

*Decree affirmed.*