1. TRUSTS (§ 217*)—TRUST FUNDS—INVESTMENT—LEGALITY OF INVESTMENT.
   A trust company, as testamentary trustee, loaned trust funds, taking therefor a bond and mortgage running to the company in its individual name. Though the mortgage was recorded, there was no record of any declaration of trust affecting the transaction. At the same time the trustee had custody of other and distinct trusts, under which it made many investments, taking the mortgages in its own name, and allotting a portion of a single mortgage to each of several unrelated trusts. *Held*, that such system of investment was legal, where the trustee kept precise records clearly showing the parts of each mortgage which were distributed to the various trusts, and notified the beneficiaries thereof, and though there was no suggestion that the security taken was insufficient.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–304, 306–309; Dec. Dig. § 217.*]

2. TRUSTS (§ 179*)—DUTY OF TRUSTEES.
   The safety of the trust fund is the principle criterion in determining the legality of acts of trustees.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 233; Dec. Dig. § 179.*]

3. TRUSTS (§ 222*)—LOAN OF TRUST FUNDS—SECURITY.
   The loan of trust funds on bond and mortgage must be secured by property sufficient, under prescribed standards, to secure repayment; the per-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sonal wealth or character of the borrower being a secondary considera-
tion.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 319; Dec. Dig. §
222.*]

4. TRUSTS (§ 217*)—TRUST FUNDS—MINGLING WITH PERSONAL FUNDS.
     An investment, wherein the trustee's personal funds are mingled with
the trust funds, is illegal.
     [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–304, 306–309;
Dec. Dig. § 217.*]

Judicial settlement of the account of the Union Trust Company of
New York, as trustee. Decree according to opinion.

Miller, King, Lane & Trafford, of New York City (Perry D. Traf-
ford and James F. Sandefur, both of New York City, of counsel), for
trustee.

Charles W. Dayton, of New York City, for objectors Bourdette and
Avery.

J. Brownson Ker, of New York City, special guardian, for objectors
Hoffman infants.

KETCHAM, S. [1] The trustee, upon its accounting made during
the progress of its trust, reports investments of the trust fund, the pro-
priety of which is disputed. From these one may be taken as a type.
It is described in the account as follows:

"1 share in $105,000. Bond and mortgage, Flanagan Realty Company, and
De Witt C. Flanagan, to Union Trust Company, on 5/9 West 65th street, New
York City, dated July 25, 1911, and maturing August 1, 1916, at 5 per cent.
interest due February and August 1st, $36,700."

The bond and mortgage mentioned in the quotation run to the Union
Trust Company. Neither instrument contains any word to qualify its
affirmation that the bond and mortgage are both held by the company
in its individual name and solely as its own. Although the mortgage
is recorded, there is not of record any declaration of trust affecting
the transaction.

The accountant, during the life of the trusts involved in this account-
ing, has had the custody of many other trusts under which it has made
many investments. These other trusts have proceeded from separate
instruments and have had nothing to do with each other or with the
trusts which are the subject of this account.

It has been the practice of the accountant to take mortgages in its
own name and from time to time, when it has become its duty to invest
the funds of any of its trusts, to allot to such trust a portion of the in-
vestment represented by such mortgage, until the moneys of several
unrelated trusts are invested together in the same mortgage. When-
ever any such allotment is made, the trust company makes fair and pre-
cise records and entries in its books, clearly demonstrating as to each
mortgage the parts thereof which have been distributed to the various
trusts concerned, and it faithfully conveys notice to the beneficiaries of
the disposition of the fund.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The company claims that it is thus enabled to rapidly find investments, to rapidly withdraw a given investment upon occasion, and to promptly reallot to another fund any share so withdrawn. It is argued that this method, although it involves more labor for the trustee, is most advantageous to all those interested in the several trusts involved; that it has grown up almost as a matter of necessity; that the trust company, in making use of this method, does not mingle trust funds with its own funds; that it does not mingle the funds of estates which are strangers to each other; that the mortgages are always under the company's control; that they are held by it for the benefit sometimes of one trust, but usually of several trusts "whose interests do not conflict, since all beneficiaries have exactly the same interest, to wit, the procuring of a good and safe investment."

There is no suggestion that the mortgages presented in the account have been made upon insufficient security. The sole question is whether or not the system thus portrayed is legal. The question presents great anxiety, for it is said that many trust companies are making use of the method of investment described, supra, and that existing transactions, involving large sums and many separate interests, will be disturbed if the practice is judicially discountenanced. These are reasons for care and patience, but there can be no reason for confirming a wrong simply because it is established.

[2-4] The first care of the law is the safety of the trust fund. Upon this truism depends every rule which has been made for the conduct of trustees. It has produced the obvious requirement that, if trust funds be loaned on mortgage, the loan shall be secured by property sufficient under prescribed standards to secure repayment of the loan. It regards the personal wealth or character of the borrower as a secondary basis of safety only. It then proceeds to requirements which touch the forms and evidences of the investment and the legal safeguards by which it may be surrounded.

In this last respect it has insisted that trust funds shall not be mingled with other funds in which the trust is not concerned. It warns us of the danger of any investment, unless it shall always be within the swift and unimpeded control of the trustee. It forbids the loan of the trust fund in combination with other funds in a transaction which might, in any conceivable event, require the concurrence of a stranger to the trust for the enforcement of the security. It also condemns an investment in which the trustee's personal funds are coupled with the funds of the trust, lest the latter be at the peril of the trustee's selfish interest.

These investments can only be made in the name of the trustee and in his character as such. This rule rests upon reasons too many and manifest to need repetition, but it is largely provoked by the need that the investments of a trust shall not only stand apart from every other interest, but be openly stamped with the individuality of the trust against every doubt. No investment which is not in form and fact adapted to the welfare of the trust, and to nothing else, can satisfy these requirements, unless an exception shall be found in the present case.

In determining whether a method of lending fiduciary funds is proper, the resources or repute of the trustee who lends them can be of no account. A method cannot be wrong if used by a poor man and right if used by a rich one, nor will reason or experience justify a disposition of trust assets by a corporate trustee which would be without justification if made by an individual trustee. These considerations are trite, but principles so rudimentary that their statement would otherwise seem pedantic and superfluous need to be repeated when they seem to have been forgotten.

If a man of small estate and of negative reputation were trustee under several wills and, as such, loaned the funds of his several trusts upon a mortgage made to himself as an individual, without any definition of the rights and duties which the transaction was intended to create, except profuse and exact statements on the subject in his own books of account, would his conduct be approved? If not, would the same transaction become commendable if he became possessed of great riches and was discovered then to be of high character? If, in either case, his transaction would be intolerable, does the like behavior become sanctified when it is the behavior of a powerful and highly respected corporation? The infirmities of the argument in behalf of the system which this accountant has instituted are many. The only test is the homely one, which falls into the language of popular caution and wisdom, "Suppose that something should happen to the trustee?"

So long as the trustee, whether individual or corporate, remains solvent, the beneficiaries of the trust are safe, even though the trustee has failed to do its utmost duty to insure their safety, but any treatment of a trust which needs the continuance of the trustee's wealth as one of its props of safety is inexcusably unsafe, so long as there are other ways which at least equally preserve the trust estate, whether the trustee remains responsible or not.

There can be no better standard by which to read the trustee's duty as to the form and evidence which he should employ in investment than to apply the conditions which would be presented upon the death or financial failure of the trustee. The strength of a legal appliance, like a mechanical device, is to be determined, not by its stability when untried, but by its capacity for resistance in the time of stress. Does the system under examination afford to the beneficiaries the highest safety and facility in case of such death or failure?

In the case of the failure of the present trustee (which is one of the potential elements of insecurity unnecessarily imposed upon the beneficiaries), the composite mortgage might, conceivably at least, be the subject of diverse claims by the company's creditors and the various beneficiaries to which parts of the investment were apportioned by the company. The probability that in such a conflict the beneficiaries would prevail adds nothing of ornament or excuse to a scheme which subjects them to the delays and outlays of an unnecessary controversy. An investment of funds which offers to the equitable owner, as part of his security, a fairly promising lawsuit is not to be admired, if there be a better method of investment known.

A trustee, whose various trusts are apportioned in the manner described, is subject to events in which he may be called upon to liquidate

one of them. In such an emergency there are no securities solely representing the loans made in behalf of the particular trust which are ready to be distributed or sold for the purpose of payment to the beneficiaries. There is no mortgage solely owned by the trustee of the given trust which may be foreclosed, if due; no bond, similarly owned, upon which action may be maintained. Neither by assignment to the beneficiaries, nor sale in the market, or foreclosure of the mortgage can the fund be produced which is necessary to satisfy just demands, unless concerted action by the trustee in all of its inconsistent trusts can be had.

If the trustee shall satisfy, sell, or enforce the mortgage to serve the trust which requires liquidation, he ill serves the other trusts by disturbing their funds. He is divided in duty, and his fidelity to one relation is disloyalty to the other. There is then a day of wrath, either for the trust which cannot be satisfied or for the other trusts which would suffer from a wasteful change of investment. Is it possible to argue that such a condition is a compliance with the fundamental rule that a trust fund shall not be invested in commixture with any other fund? Against this misfortune in each of its forms the company frankly argues that in practice it can always transfer a specified portion of one of its mortgages from one trust to another, so that it is ever ready to respond to the emergencies of any one of its trusts. Of course this suggestion contains nothing in support of the plan itself in its form and legal effect. It is based wholly upon the trustee's personality and has no foundation in the evidences of the investment. It only indicates that the plan, even though bad, can produce no harm, because the situation and prospects of the company are such that it will always be able to substitute one investment for another, if it wants to do so. This is to say, that a plan containing in its essence a danger, which, so far as the plan itself is concerned, will always remain, at once becomes safe and proper if its fulfillment be intrusted to one whose personal powers and opportunities are such, and are likely to continue to be such, that the danger which resides in the plan will probably be averted if these powers and opportunities shall be employed.

Clearly the trustee, whether of large or small resources, takes no obligation, either from the nature of his trust or from the form of the investment, to maintain himself constantly in such financial state or relations as will enable him to rescue the trust fund from the inconvenience to which its investment has exposed it, nor does he undertake to employ his own resources to effect a change of investment.

In no manner is the safety of the trust considered, provided for or in any manner affected by the plan of investment, as evidenced in the written form of the security. If, in the written evidence of the investment, the trustee should covenant to make the substitution, upon occasion of need, it would at once appear that the safety of the investment was in part wagered upon the personal promise and responsibility of the trustee. No one would contend that the beneficiaries' interest could be in any degree made to depend for its security upon the agreement of the trustee to support the investment. How, then, is the transaction improved when the supposed element of safety rests alone upon the present good nature of the trustee and the mere confidence that it will remain able and willing to save the investment?

Reasoning which rests wholly upon the ability of the present account-ant, or a trustee in a similar situation, to switch from one trust to an-other a given fraction of a mortgage confesses that the primary reliance of the beneficiaries must be at all times upon the number of trusts with which the company shall be invested, and the assurance, as to a purely casual and varying fact that, at any time, upon the signal of emergency, it will have waiting for investment from among the trusts in its hands any conceivable sum or sums of money, of such size and number that they shall be adjustable to any amounts which may at the time be with-drawn from investment. So long as the interest of the beneficiary as to elements of the investment to which he is lawfully entitled depends solely upon the responsibility, activity, and financial relations of his trustee, the latter might as well not assign the fractions of its mort-gages at all.

In the present case there would be no variation from the security of the several trusts if the company should hold its own mortgages as its own and maintain itself in readiness to pay such sums of interest or principal as the beneficiaries would receive if their fund were in-vested. While the trustee remains in business, and exercises its right to do as it may with its own mortgages, the participants in its favor have no more relation to the mortgages than to the other assets which the company holds.

One essential feature of the scheme under which this trust is being managed is in itself enough to attract condemnation. Under the ac-countant's proposition, unless that which is wrong for one may be right for another, trustees of all sorts and conditions may, in manner like unto that adopted by this accountant, invest moneys of a trust in the individual name of the trustee, a heresy frightful in its conception and effects. Whether the trustee were individual or corporate, can the mind exclude the peril which, in the hour of temptation, would be im-posed by the license thus offered?

Men in extremity have been known to reach across every barrier of trust to take any moneys or securities which could be converted to their salvation. Nor is there any hope to be derived from corporate history that mortgages or securities, standing without qualification in the name of a corporation, would always be safe from the private depredation of its own officers or that they would be sacredly regarded at a time when their proceeds, if used, might save the institution.

Authority is ample for the general principles affirmed in this opinion and for their ordinary application. They do not need definition or rec-ognition. What they need is a simple and loyal observance. Like the truths of personal morality they must not only be taken into the under-standing, but must be faithfully accepted as a rule of conduct. It is the law that a trustee shall not invest fiduciary funds in his own name. Doud v. Holmes, 63 N. Y. 635; Matter of Stafford, 11 Barb. 353; Otto v. Van Riper, 31 App. Div. 278, 52 N. Y. Supp. 773; McAllister v. Commonwealth, 30 Pa. 536; White v. Sherman, 168 Ill. 589, 48 N. E. 128, 61 Am. St. Rep. 132; Gilbert v. Welsch, 75 Ind. 557. It is the law that he shall not mingle the funds of a trust with his own or the funds of another trust. Doud v. Holmes, 63 N. Y. 635; Case v. Abeel,

1 Paige, 393; Matter of Stafford, 11 Barb. 353; Otto v. Van Riper, 31 App. Div. 278, 52 N. Y. Supp. 773; De Jarnette v. De Jarnette, 41 Ala. 708; Matter of Hodge's Estate, 66 Vt. 70, 28 Atl. 663, 44 Am. St. Rep. 820. These rules bear equally upon men of every degree, and as to their constraint it has not been given to any man or aggregation of men to bind or loose, and certainly no one is permitted to administer under these rules indulgence to himself.

The result would be the disapproval of the investments to which objection is made, but the convictions thus declared cannot be permitted to control the decision of this case. They are contrary to the effect of authorities in this state, which, even though they may be susceptible of criticism and distinction, or may be arrayed against the judicial utterances of other jurisdictions, must constrain a court in the first instance. When individual judgment finds itself overcome, but not persuaded, it might yield in silence, were it not for an abiding faith that a great question is never settled until it is settled right, and that, until that question shall receive the last adjustment, protest, rather than an idle decorum, may be a duty.

Cases which touch upon the propriety of investments by which the trustees have massed the funds of many trusts in what are called participating mortgages are Doud v. Holmes, 63 N. Y. 635; Chesterman v. Eyland, 81 N. Y. 398; Barry v. Lambert, 98 N. Y. 300, 50 Am. Rep. 677; Matter of Long Island Loan & Trust Co., 92 App. Div. 1, 87 N. Y. Supp. 65; Elkin v. Elkin, 29 Misc. Rep. 513, 61 N. Y. Supp. 947; Matter of Menzie, 54 Misc. Rep. 188, 105 N. Y. Supp. 925; Matter of Cheseborough, N. Y. L. J., Oct. 5, 1895; Real Estate Co. v. White, N. Y. L. J., Oct. 23, 1901; Matter of Massinberd's Settlement, 60 L. I. 620; Webb v. Jonas, 57 L. J. 671; McCullough's Ex'rs v. McCullough, 44 N. J. Eq. 313, 14 Atl. 642; Graves' Appeal, 146 Pa. 176, 23 Atl. 231—and the subject has been given nonjudicial consideration in the following: 17 Am. & Eng. Ency. of Law, 456; 28 Am. & Eng. Ency. of Law, 1057; 1 Perry Trusts (6th Ed.), § 463; Lewin Trusts, 331; Underhill Trusts (Am. Ed.) 287; McKinney, "Some Considerations Concerning Investments by Trustees," 24 Bench & Bar, 56, 66; 39 Cyc. 408; Editorial N. Y. L. J., March 6, 1911; Godefroi Trusts, 529, cited by counsel but not accessible to the court.

Objection is made by remaindermen that the trustee has retained one-half commissions' upon the corpus of the trust estate in advance of allowance thereof by the court. The trustee is now entitled to these commissions. There would then remain no possible relief against the accountant unless it were chargeable with interest from the time of the taking of the commissions; but any question in this respect disappears, since the beneficiaries for life, solely entitled to the income of the fund, expressly authorized the act.

As to statements contained in the account not relating to the method of investment or not affecting the statement of figures found in the schedules, the decree may provide that the same are not adopted by the parties objecting or by the court.

Objections not discussed supra or disposed of upon the trial are overruled.

Decreed accordingly.