The Utica Insurance Company v. Lynch.

---

## The Utica Insurance Company vs. Lynch and others.

It is the duty of a receiver to keep the trust fund entirely separate and distinct from his own moneys. And if deposited in a bank for safe keeping, the money should be deposited to a separate account, in his name as receiver ; to the end that the fund can at all times be traced and identified.

If a receiver loans out any part of the moneys which came to his hands, as such receiver, even temporarily, to his friends or others, it is a breach of trust.

Where a trustee mingles the trust funds with his own funds, and uses them, it is a breach of trust, and he will be charged with simple interest thereon ; although he has not actually made a profit upon the trust funds equal to simple interest.

A trustee is not allowed to make a profit out of the trust funds for his own benefit ; and if he employs them in trade, whereby he makes more than simple interest, he will be charged with the whole profits ; either by making periodical rests and charging him with compound interest, or in such other manner as will best carry out the principle of giving to the cestui que trust the benefit of all profits made beyond the simple interest.

In such cases, the court allows simple interest only, where it is evident that the profits made by the trustee could not have exceeded that amount. But where it is doubtful whether the profits did not exceed the simple interest, the cestui que trust will be allowed to elect between such interest and the actual profits made out of the trust fund ; such profits to be ascertained upon a reference.

Stating the accounts with periodical rests, and compounding the interest, is only a convenient mode, adopted by the court, to charge the trustee with the amount of the profits supposed to have been made by him, in the use of the trust money, where the actual amount of the profits, beyond simple interest, cannot be ascertained.

The rule is well settled, that a trustee, who has mingled the trust moneys with his own, and has used the same, or any part thereof, in violation of his trust, will be charged with interest on such moneys.

THIS case came before the court upon exceptions of the receiver in this suit, to the report of the master, upon passing his accounts. By the decree, the receiver was directed to pass his accounts, and to pay over to the master the balance in his hands, to be disposed of according to the directions of the decree. It appeared that the receiver's accounts commenced in 1831, and that the moneys received by him, between that time and 1839, when the amount in his hands, exclusive of interest, was paid over to the master, under the decree, were not kept separate, but were mingled with his own moneys, in the bank where he kept his account, in his own name; and that he drew out and used large sums of the trust fund, from time to time, by loaning the same to his friends and otherwise. The master therefore charged the receiver with simple interest upon the annual balances in his hands, commencing on the 31st of December, 1832.

*W. C. Noyes*, for the complainants.

*M. T. Reynolds*, for the receiver.

THE CHANCELLOR. No question can arise upon these exceptions, as to whether Roberts was or was not appointed receiver in this cause. For he passed his account before the master, in his character of receiver, and under the provisions of the decree; which directed the receiver theretofore appointed in the cause, to pass his accounts and to pay over to the master the balance which should be found due from him, upon such accounting. And in both of his affidavits, produced before the master, his character of receiver, in relation to the fund for which he was to account, is distinctly recognized. There is no doubt,

therefore, that he had been appointed a receiver in this cause; although the order for his appointment was not produced before the master, by either party, when Roberts appeared to pass his accounts as such receiver. The only question then which properly arises upon these exceptions is, whether a receiver, who violates his trust, by mixing the trust fund with his own moneys, or with moneys which he holds in trust for others, and who uses such moneys for his own purposes, or loans them out from time to time on his own account, should be charged with interest.

The order appointing the receiver was not produced before the master, to show what directions were given to the receiver in relation to the funds which should come to his hands. But if no directions were given, it was his duty to keep the trust fund entirely separate and distinct from his own moneys. And if deposited in the bank, for safe keeping, the money should have been deposited to a separate account, in his name as receiver; so that the fund could at all times be traced and identified. From the facts before me, I am not prepared to say it was the duty of the receiver to apply to the court to have the fund invested ; as the parties interested therein were adults, and in a situation to protect their own rights. But the neglect of the parties to obtain directions to bring the fund into court, and have it invested to abide the decision in the suit, did not justify the receiver in mingling the trust moneys with his own funds, in bank, or with moneys received and deposited by him as the agent of the estate of D. Lynch. And the loaning out of any part of the moneys which came to his hands as receiver, even temporarily, to his friends, or to the estate of D. Lynch, was a palpable breach of trust. That such loans were made is distinctly admitted in the last affidavit made by the receiver.

It is true the amount standing to the account of Roberts, in bank, was at times equal to, and even greater, than the amount in his hands as receiver. But whether the sums thus standing in his own name, belonged to this fund, or were moneys received and deposited by him on account of the estate of D. Lynch, for which estate he was receiving and disbursing large sums of

money, does not appear.  It is evident, however, from the state of the bank account from time to time, that very large portions of the trust fund must have been withdrawn and misapplied, temporarily at least; even if none of the funds in the bank belonged to the estate of D. Lynch.  For, in June, 1834, the balance standing to the credit of Roberts, in bank, was nearly $700 less than the amount with which he was chargeable as receiver; and in June of the next year, the deficiency was about $1200.  In June, 1836, the deficiency was more than trebled; in December of that year it still exceeded $3000; and in June and December, 1837, the deficiency was still greater.

The decree was affirmed, by the court for the correction of errors, in December, 1837, as stated by Roberts, in his affidavit; when, according to the terms of the decree, he should have passed his account, and paid over the whole. fund in his hands to the master.  And although nothing was paid over by him until 1839, the amount standing to his credit in the bank, in December, 1838, was about $4400 less than the balance then in his hands as receiver.  This deficiency is accounted for by showing that the trust fund had been loaned, temporarily, to the trustees of D. Lynch's estate and others, under an agreement that it should be returned whenever it was wanted.  From this statement of the facts, therefore, it is evident that the fund, in the hands of the receiver, has been so mingled with his own funds, and used by him, as to amount to a breach of trust, and to render him liable at least for simple interest thereon.

The court, in charging a trustee with interest, when he has mingled the trust fund with his own, or has neglected his duty in relation to the fund, does not always proceed upon the ground that the trustee has made a profit by his breach of trust.  It is true he is not permitted to make a profit out of the trust fund, for his own benefit.  And if he has employed the fund in trade, whereby he has made more than simple interest, he may be charged with the whole of such profits; either by making periodical rests, and charging him with compound interest, or in such other manner as may best carry out the principle of giving the cestui que trust the benefit of all profits made beyond the

The Utica Insurance Company v. Lynch.

simple interest. (*Raphael* v. *Boehm*, 11 *Ves.* 92. *Decker* v. *Somes*, 2 *Myl. & Keen*, 655. *Schieffelin* v. *Stewart*, 1 *John. Ch. Rep.* 620. *Montjoy and wife* v. *Lashbrook*, 2 *B. Monro. Rep.* 261. *Clarkson* v. *De Peyster*, *Hopk. Rep.* 424.) In cases of that kind, the principle of the court appears to be, to allow simple interest only, where it is evident that the profits made by the trustee could not have exceeded that amount. But if it is doubtful whether the profits were not greater, then to allow the cestui que trust to elect, between such interest and an inquiry as to the actual profits made out of the trust fund. Stating the account with periodical rests, and compounding the interest, is only a convenient mode, adopted by the court, to charge the trustee with the amount of profits supposed to have been made by him in the use of the money; where the actual amount of profits, which he has made, beyond simple interest, cannot be ascertained. It does not follow from this, however, that the trustee who has mixed the trust funds with his own, and has violated the trust by using the fund himself, or by loaning it to others without interest, is to be excused from the payment of simple interest; although he may not have actually made a profit upon the trust fund equal to the simple interest. On the contrary, the rule appears to be well established, that where the trustee mingles the trust funds with his own, and uses the same, or any part thereof, in violation of the trust, he is to be charged with interest on the fund.(*a*) In the case of *Mumford* v. *Murray*, (6 *John. Ch. Rep.* 17,) Chancellor Kent says, "the defendant must be charged with interest on the moneys from time to time received; and for this plain reason, that he mingled the moneys belonging to his partner with his own, and used those moneys as his own. It forms therefore a just and clear case for interest." And in the case of *Clarkson* v. *De Peyster*, before referred to, where the guardian mingled the moneys of his wards with his own, and in that way had the use thereof, although he did not employ them in trade, nor invest them so as to produce interest, Chancellor Sanford directed an inquiry as to whether

(*a*) See *Milland* v. *Gray*, (2 *Coll. Ch. Rep.* 295.)

profits had been made from the trust moneys ; and that the defendants should be charged with simple interest upon the moneys remaining in his hands, from which no profits, or profits not exceeding the simple interest, should appear to have been made. That decision would justify the allowance, by the master, of the simple interest in the case under consideration, although the receiver, in some of the temporary loans which he made of the trust moneys to his friends, did not charge the borrowers with interest. The mixing of the trust moneys with the trustee's own funds, and using them himself, or lending them to his friends temporarily, and under the expectation that the money would be promptly replaced, before it was wanted for the purposes of the trust, is one of the most common causes of the loss of trust funds, in the hands of executors, receivers and guardians, and other trustees. And the safety of those whose property is necessarily placed in the hands of trustees, makes it the imperative duty of the court to restrain and discourage such breaches of trust, by charging those who thus deal with the funds intrusted to their care, with interest ; although the fund is not actually lost to the cestui que trust.

The master was right in this case, therefore, in charging the receiver with interest on the funds in his hands ; which funds were thus mingled with his own moneys in bank, and loaned out from time to time to others, or drawn out for his own temporary purposes. The exceptions to the master's report must be overruled, with costs to be taxed, and the master's report must be confirmed ; and the receiver must pay over, to the master, the balance due from him, as ascertained by the report, with interest thereon from the date of the report ; as directed by the order in this cause.(*b*)

(*b*) Affirmed on appeal to the court for the correction of errors, December, 1846.