Boynton, J.
The eleventh section of the act of March 11, 1853 (1 S. & C. 764), requires every justice of the peace before entering upon the duties of his office to give bond, payable to the state, conditioned that he will well and truly pay over according to law all moneys which may come into his hands by virtue of his office. And the act of April 30, 1862 (S. & S. 423), enjoins upon justices of the peace the duty to receive from constables all moneys by them collected, except where the same have been paid over by the •constable to the party entitled thereto before the return of his execution, and declares that “ all moneys by such justices, so received, or otherwise collected, with or without process, and received in their official capacity for the use •of any person or persons, shall be by them paid over to such person or persons, his or their agent, on demand.” It is also enacted, that on refusal or neglect to pay over money ■so received to the party'entitled thereto, summary proceedings for the amercement of the justice may be instituted in the probate court. The present action was brought, not upon the bond, but for a breach of tiie duty enjoined by the statute. The money paid on the judgment was received by the justice in his official capacity. The circumstance that the same was received from the judgment debtors a few days before the stay of execution expired, does not affect the character in which it was received, nor the duty of the justice respecting its safe keeping.
The money was received for the judgment creditor and satisfaction of the judgment was entered on the docket. These were official acts, done in the performance of official duty, and must be held to have the same legal effect as if done and performed on the day the stay expired. The question then arises: Did the deposit by the justice, in the *29 bank, of tbe funds so collected, to his own credit, without the assent of the owner of the fund, operate as a conversion of the same to the use of the justice ? Or, in other words, the bank being in good repute when the deposit was made, did its-subsequent failure to meet its liabilities excuse or relieve the justice from the performance of the duty to pay over the amount collected to the judgment creditor? The deposit made was not a special deposit, and possessed none of the characteristics of a bailment. That the identical funds deposited were to be kept by the bauk and returned to the depositor, is not pretended. Whether a special deposit of the fund in the individual name of the-justice would have relieved him from liability upon failure of the bank, is a question we have not considered. There was no such deposit made either in his own name or that of the judgment creditor. The memorandum by the justice in ]the bank pass-book did not affect the character of the deposit, nor in any wise affect his duty or change his-relation to the judgment creditor. He states in his testimony that his purpose in making the memorandum was, that his book should show, in case of accident to him, all' about the money and where it was. But such purpose does-not change the legal character of the transaction.
As between him and the bank, he was a general depositor, and the title to the funds, when deposited, vested in the bank and they became a part of its assets. No'interest in or claim upon the specific funds received from the judgment debtors remained either in the judgment creditor or the justice. The relation between the bauk and the justice, as respects the money deposited, was that, not of bailor and bailee, but of debtor and creditor. In legal effect the deposit was a loan by the justice to the bank of the money belonging to the plaintiff" below. Ringo v. Field, 1 Eng. 49 ; Story’s Bailm. § 100.
The case of Montieth v. Bissell’s Adm’r, Wright, 411, relied on by plaintiff in error, has little or no bearing upon the question here involved. There the justice received the money from the judgment debtor, and placed it in his desk,. *30 •where he kept his own money and that received in his official capacity, and locked it up. Notice was immediately given to the judgment creditor that the money was ready for him, but he neglected to call for it until after the next Sunday, on which day while the justice was at ■church, his house was broken open and the desk and •contents carried away. The court held that if the justice received the money in his official capacity — which was a disputed fact — he was the legal bailee of the creditor, without reward, and, as such, only liable for gross negligence. It will be observed that the money stolen was the identical money paid by the judgment debtor, no part of which had been used by the justice, or converted to his own use. Bartlett v. Hamilton, 46 Me. 435.
Our attention has been directed to another class of cases, the principle of which, it is contended, is decisive of the ■case at bar. They assert the doctrine that so long as money ■ or property, or the proceeds thereof, belonging to the prin■cipal, may be traced and identified in the hands of his agent, or his personal representative or assignee, the prin■cipal may recover it, unless it has reached the hands of an innocent holder. There is no doubt of the correctness • of this rule.
The question, in such case, is one of title to the fund, .and usually arises between the personal representative of the trustee of the fund, or the depositary of the latter, and the beneficial owner; and so long as the beneficiary can trace the fund, and identify it, he is entitled to it, and for the very obvious reason that he o^ns it.
In Pennell v. Deffell, 4 De Gex., M. & G. 372, Knight Bruce, Lord Justice, in discussing the principle, says: “ When a trustee pays trust money into a bank, to his •credit, the account being a simple account with himself, not marked or distinguished in any maimer, the debt thus ■-constituted from the bank to him is one which, as long as it remains due, belongs specifically to the trust as much .and as effectually as the money so paid would have done, Lad it specifically been placed by the trustee in a particu *31 lar repository and so remained; that is to say, if the specific debt shall be claimed on behalf of the cestuis que trust■ent, it must be deemed specifically theirs, as between the trustee and his executors and the general creditors,after his •death on the one hand, and the trust on the other. Whether, the cestuis que trustent are bound to take to the debt — whether the deposit was a breach of trust, is a different question.”
The same principle was decided in The Overseers of the Poor v. The Bank of Virginia, 2 Gratt. 544; Veil v. Mitchell, 4 Wash. C. C. 105 ; Frith v. Cartland, 2 Hem. & Mil. 417; Brown v. Dunham, 11 Gray, 42; and in Van Allen v. American National Bank, 52 N. Y. 1.
In the latter case, it was held that “ where an agent deposits in a bank, to his own account, the proceeds of prop•erty sold by him for his principal, under instructions there to keep them, a trust is impressed upon the deposit, in favor of the principal, and his right thereto is not affected hy the fact that the agent, at the same time, deposits other moneys belonging to himself; nor is it affected by the fact that the agent, instead of depositing the identical moneys received by him on account of his principal, substitutes other moneys therefor. In such case, in an action brought hy the principal against the bank, upon its refusal to pay upon presentation of the agent’s check for the amount so deposited, the bank can not set up a want of privity. It is .a question of title solely.”
It will readily be seen that the principle of these cases is in nowise decisive of the case under discussion. Nor would its determination seem to be materially affected hy it. The right of the beneficiary of the fund to pursue and reclaim it, so long as he can trace and distinguish it from •other funds, does not affect his right to hold the trustee to a personal liability, where the latter has been guilty of a breach of duty respecting the trust property. The claimant of the fund may have two remedies, and may elect which one he will resort to. If A should unlawfully sell B’s horse, B may replevin the horse from the purchaser, or sue A for the conversion. If the plaintiff below had ratified the aet *32 of the plaintiff in error in depositing the fund in the bank,, and sought to recover the same from the bank, as his-money, the fact that he might succeed would not affect his-right, in the absence of such ratification, to maintain an action against the justice for the misappropriation of the fund. The rule in equity is well settled, and by a class of cases not supposed to be in conflict with the. foregoing, that if a. trustee deposits the funds of a trust estate in bank, in his own name individually, with his own private funds, he thereby becomes debtor to the trust estate, and a creditor of the bank; and, in case the trust funds are lost through the insolvency of the bank, the trustee becomes individually liable for the loss. Wren v. Kirton, 11 Ves. 377; Macdonnell v. Harding, 8 Eng. Ch. 177; In the matter of Stafford, 11 Barb. 353; Brown v. Rickets, 4 John Ch. 303; The Utica Iris. Co. v. Lynch, 11 Paige, 520. Where a sheriff collected money under an execution, and of his own accord deposited the same in a bank which failed, he was-held liable to the plaintiff in execution. Phillips v. Lamar, 27 Geo. 227.
In Robinson v. Ward, 2 Car. & Pay. 59, it was held that where an attorney, having in his hands the money of his-client, places the same to his private credit, at his bank'er’s, he will be liable to the client for the amount, if the bank fail, although he does so bona fide, and has a large-sum of money of his own at the banker’s.
Abbott, C. J., said: “If the person having the money mixes it with his own, he thereby makes himself, personally, debtor to the estate. Here the defendant has mixed this money with his own, by paying it to the credit of his private account at his banker’s, and he is therefore liable in this action. This is a very hard case, and all suspicion against the defendant is quite out of the question; but one of two innocent parties must lose the money, and, under the circumstances of the ease, I think the plaintiff is entitled to a verdict.”
These adjudications are in point, and are decisive of the present case.
*33 Where a justice of the peace receives, in his official capacity, money, in satisfaction of a judgment upon his docket, and places the money so received to his private account at a bank which fails, he is liable-to make good the loss to the judgment creditor.

Motion overruled.