In the Matter of the Estate of ELIZABETH C. HARRIS, Deceased.

Surrogate's Court, New York County, May 2, 1938.

*Straus & Kenyon* [*Helen Potter Hanson* of counsel], for the executors.

*Frank P. Woglom*, special guardian for infant.

DELEHANTY, S. The will of deceased provides as follows: " I authorize and empower my said Executors and also my said Trustee, in their or its absolute discretion, to cause the securities which may from time to time form part of my estate or of any trust created hereunder, to be registered in their or its name as Executors or Trustee, or in their or its own name, or in the name of their or its nominee, or to take and keep the same unregistered and retain them or any part of them in such condition that they may pass by delivery."

Acting on authority of this provision of the will the executors have been carrying and now are carrying securities of the estate in the name of or in the custody of a copartnership known as Way & Company. This copartnership was organized by employees of the corporate executor. It was organized apparently pursuant to a formal resolution of the board of directors of the corporate executor. One of its major purposes is the entering into contract with the corporate executor for the handling of securities possessed by the corporate executor in its corporate or fiduciary capacity. The general objective of such arrangement appears to be the simplification of transfers with consequent speed and ease of administration of the property.

Section 231 of the Surrogate's Court Act provides:

" Funds of estates to be kept separate. Every executor, administrator, guardian or testamentary trustee shall keep the funds and property received from the estate of any deceased person separate and distinct from his own personal fund and property. He shall not invest the same or deposit the same with any person, association or corporation doing business under the Banking Law or other person or institution, in his own name, but all transactions had and done by him shall be in his name as such executor, administrator, guardian or testamentary trustee.

" Any person violating any of the provisions of this section shall be guilty of a misdemeanor."

Section 27 of the Penal Law provides: " All principals in misdemeanors. A person who commits or participates in an act which would make him an accessory if the crime committed were a felony, is a principal and may be indicted and punished as such, if the crime be a misdemeanor."

Section 2 of the Penal Law in part provides: " Principal. A person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a ' principal.' "

Section 37 of the General Construction Law provides: " Person. The term person includes a corporation and a joint-stock association." (See, also, *People* v. *Dunbar Contracting Co.*, 165 App. Div. 59; affd., 215 N. Y. 416.)

The question presented is whether the quoted text of the will authorizes the executors to deal with the trust estate as they have been and are doing.

" Trust funds should not only be kept independent of individual and other trust funds, but the investments thereof should, so far as possible, be clearly defined and at all times stamped with the individual trust to which they severally belong   *   *   *.   The identity of investment of trust funds should not, when otherways reasonably possible, be wholly dependent upon the continuance of rules relating thereto by corporate trustees or the accuracy and honesty of bookkeepers and employees." (*Matter of Union Trust Co.*, 219 N. Y. 514, 521, 522.)   " So long as the trustee, whether individual or corporate, remains solvent the beneficiaries of the trust are safe, even though the trustee has failed to do its utmost duty to insure their safety, but any treatment of a trust which needs the continuance of the trustee's wealth as one of its props of safety is inexcusably unsafe, so long as there are other ways which at least equally preserve the trust estate whether the trustee remains responsible or not." (*Matter of Union Trust Co.*, 86 Misc. 392, 398.)   " The duty imposed upon fiduciaries by section 231 of the Surrogate's Court Act is based upon sound public policy. It is a salutary protection to beneficiaries of estates.   It tends to prevent diversion and defalcations by representatives of estates. It prevents the mingling of trust funds.   It furnishes in many cases effective means of tracing the trust property.   It earmarks the trust funds and affords an opportunity for beneficiaries to verify the receipts and disbursements of the   *   *   *   trustee." (*Matter of Kramer*, 127 Misc. 485; affd., 220 App. Div. 816.)

Unless it be held that a testator by his will may validly license the doing of an act which otherwise constitutes a criminal offense the court must sustain the objections of the special guardian to the methods pursued by the executors.   Not only is the public policy of the State declared by section 231 of the Surrogate's Court Act but in respect of moneys of the estate it is declared in subdivision 7 of section 104 of that act where the depositing of moneys in other than a fiduciary account is made basis for summary removal from the fiduciary office.   The evils flowing from the holding by a fiduciary of assets, in some name other than his own as fiduciary, affects not only the individuals interested in the estate but the general public as well.   Securities held without identification

mark may be the means of defrauding innocent third parties. The possible insolvency or other legal complications affecting the nominee might embroil the trustee with others not interested in the estate. The dissipation of trust assets is made easy by the practice. The confusion of trust transactions makes difficult the accounting therefor. As against these patent dangers in the practice it is argued only that in times of stress and especially in times of violent fluctuations in security values it is urgent that transfers be made promptly because loss to the trust estate would be occasioned by delay. The argument is made now in a time of depression. The delay would operate to the trust advantage in boom times. The court should not concern itself either with booms or depressions as such but rather with the establishment of a proper basis for the care and handling of trust assets. Any losses or benefits flowing from the establishment of that proper basis of management and for the handling of trust assets on a proper basis after it is once established must be accepted as part of the administration of the trust. No trustee has ever been held accountable for delays occasioned because of a proper trust administration.

Notice should be taken of the text of the Restatement of the Law of Trusts. In section 179 of the Restatement the bold face text says:

" Duty to keep trust property separate.

" The trustee is under a duty to the beneficiary to keep the trust property separate from his individual property, and, so far as it is reasonable that he should do so, to keep it separate from other property not subject to the trust and to see that the property is designated as property of the trust."

In comment " d " under this section the Restatement says: " By the terms of the trust, however, the trustee may be authorized to hold the trust property in his name or in the name of a third person nominated by him without designating the particular trust or without indicating that it is held upon trust."

The term trust used in the Restatement without any qualifying adjective covers fiduciary relationships much broader than those created by will admitted to probate under the laws of a State which otherwise has restricted the powers of fiduciaries in estate administrations. General principles such as are stated in the Restatement must yield to specific statutory mandates. Under the law of this State the public policy has been declared by the statutes to which reference has already been made. That policy should be enforced. The practice here contended for by the executors should be and it is disapproved.

. It should be noted that no injury has been done to the trust estate by the practice. There is no need for surcharge therefor.

The court should and does recognize the good faith of the executors in carrying on the practice. That good faith is not basis for denying full validity to the mandate of the statute. Accordingly, the objections of the special guardian in this respect are sustained. This disposes of his objections 1 and 2. His objections 4 and 5 have been disposed of by compliance of the executors with directions for the transfers of the funds there referred to. Objections 3, 6, 7, 8, 9 and 10 are overruled as not involved in this executorial accounting. They may be pertinent in the subsequent accounting by the trustee. Objection 11 is overruled.

Submit, on notice, decree settling the account accordingly.