S. Samuel DiFalco, S.
The guardian ad litem of an infant beneficiary objects to the actions of the trustees in permitting a firm of stockbrokers to keep in their possession certificates for shares of stock which are in the name of a nominee of the brokers, or, as the guardian ad litem puts it, in “ street names,” *551 The trustees defend their action on the basis of a provision in article fifth of the will, which authorizes and empowers the trustees to ‘ ‘ hold any security in bearer form in their discretion and/or to register any security held by them hereunder in their own name or in the name of their nominees, with or without the addition of words indicating that they hold such security in a fiduciary capacity. ”
In Matter of Harris (169 Misc. 943), Surrogate Delehahty considered a somewhat similar grant of power to fiduciaries. After a careful search of the authorities and a discussion of the points involved, the Surrogate said (p. 945): “ Unless it be held that a testator by his will may validly license the doing of an act which otherwise constitutes a criminal offense the court must sustain the objections of the special guardian to the methods pursued by the executors. Not only is the public policy of the State declared by section 231 of the Surrogate’s Court Act but in respect of moneys of the estate it is declared in subdivision 7 of section 104 of that act where the depositing of moneys in other than a fiduciary account is made basis for summary removal from the fiduciary office. The evils flowing from the holding of a fiduciary of assets, in some name other than his own as fiduciary, affects not only the individuals interested in the estate but the general public as well. ’ ’ The opinion cites reasons why it is inimical to the interest of the parties and the public to retain property in names other than those of the fiduciaries.
In the revision of the procedure act in 1966, the matter contained in section 231 was transferred to EPTL 11-1.6 without change of substance, except to make the new section applicable to inter vivos trustees, as well as estate fiduciaries. Other changes, according to the Revisers’ notes, are merely changes in form for the purpose of clarification and for conforming the text to the drafting pattern of the new law. Violation of the section is still declared to be a misdemeanor.
It is not without significance that in the course of the statutory revisions, a change of policy in this area of the law was attempted and subsequently abandoned with a reaffirmation of the original public policy. As originally enacted in 1964 (L. 1964, ch. 681) the Fiduciaries’ Powers Act removed from section 231 of the Surrogate’s Court Act the provisions relative to the power of a corporate fiduciary to register securities in the name of nominees and it added new text which would explicitly authorize either a corporate fiduciary or an individual fiduciary to register securities in the name of a nominee or nominees. (Decedent Estate Law, § 127, subd. 2, par. [m].) At the very next legislative session the statute was amended (L. 1965, ch. *552 294). The purpose of this amendment, according to the Revisers’ note, was “ to restore the rule that liability for loss occasioned by the acts of a nominee of a bank, trust company or private banker rests solely on the latter. It also restores the rule that an individual fiduciary may only use the nominee of a bank, trust company or private banker.” Thus the Legislature restored the rule that only a corporate fiduciary which met specified standards and conditions could register securities in street names and individual fiduciaries could register only through banks, which by law became liable for loss caused by the bank’s nominee. The law today remains, therefore, as it was in 1938 when Surrogate Delehaktty held that a testamentary grant of authority, such as is here involved, violates New York public policy as declared by the Legislature.
The more remote history of section 231 shows clearly the development of the legislative policy. In 1939 it was amended upon recommendation of the Surrogates’ Association of the State of New York. The purpose of the amendment was stated as follows in the note which was printed-with the bill (Sen. Int. 1345; Assem. Int. 1695): “ It was held in Matter of Harris (169 Misc. 943) that the public policy of the State of New York declared SC =A § 231 required that stocks and other like securities be kept in the name of the fiduciary and not held in the name of a nominee even though the testator in the particular will there involved had attempted to grant power so to hold his securities. Following that decision it was urged upon the surrogates that the rules of the New York Stock Exchange and other exchanges made impossible prompt sale through a stock exchange of stocks and like securities standing in the name of a fiduciary as such. It was urged that the interest of estates required a liberalizing of the strict rule of SCA § 231 provided safety for the estate assets could be assured. It was found that the safeguards actually employed by corporate fiduciaries who placed securities in the name of a nominee were such as to assure safety against misappropriation. It is felt that the proposed amendment secures protection for estates against loss and also secures a greater ease in transfer which will work to the benefit of estates. The state policy of requiring a fiduciary to hold property of the estate in his own name as fiduciary is still continued as to individuals. It is modified only in respect of corporate fiduciaries who assume full responsibility for the securities if they take advantage of the permission given by the amendment. In order to assure to individual fiduciaries however an opportunity to take advantage of the same procedure for transfer it has been provided that an individual fiduciary may procure the services *553 as depository of a banking institution or of a private banker with adequate capital funds; and that a deposit by an individual fiduciary with such a banking institution or private banker may validly be made for the purpose of having the stock or other like securities held in the name of a nominee of such bank or banker. When so deposited the bank or banker immediately assumes liability for the safety of the securities. Such securities may not be redelivered to the individual fiduciary until they have once more been re-transferred to his name as fiduciary. The changes proposed by this amendment relate only to registered securities. It is not intended to compel the fiduciary or the depository to register bearer bonds or to prohibit their retention without registration so long as such bearer bonds are identified, earmarked and segregated as assets of the estate. Thus the present state policy for the protection of estates which is found in SCA § 231 is preserved while a flexible procedure is provided to enable individual fiduciaries to take advantage of the nominee system.”
Professor 'Scott states the general rule that a fiduciary may be permitted by the terms of the trust to take title in the name of a third person, and though he adverts to the New York statute and the decision in Matter of Harris, he suggests that the statute was not intended to apply to cases where the fiduciary was authorized by the trust instrument to take title in the name of another. (2 Scott, Trusts, 3d ed., p. 1449.) It is to be noted, however, that Judge Delehanty had considered the general rule as set forth in the Restatement of Trusts, but he said (p. 946): ‘ ‘ General principles such as are stated in the Restatement must yield to specific statutory mandates. Under the law of this State the public policy has been declared by the statutes to which reference has already been made. That policy should be enforced. The practice here contended for by the executors should be and it is disapproved.” Professor Scott correctly observes that “ At any rate, soon after this decision the statute was amended so as to permit a bank or trust company to cause securities to be registered and held in the name of a nominee.” However, the authority granted in that amendment was limited in scope in order to afford financial protection to the beneficiaries. The statutory history and the legislative action make clear the intent of this State to maintain the public policy expressed in Matter of Harris, expanded only by the legislative action in 1939.
In any event, Professor Scott points out that “ the trustee would be liable, however, if he permitted the third person to have possession of the certificate and if the third person mis *554 appropriated it, since the trustee would not he using proper care to preserve the trust estate.” (Scott, Trusts, supra.) Thus the conduct of both registering the securities in the naipe of another and giving possession of the securities to that other person constitutes a breach of trust, even if one were to disagree with the declaration of policy as expressed in Matter of Harris and to say that mere registration of securities in another name is not contrary to our public policy when the will explicitly authorizes such conduct.
In the present case the objection is directed specifically to the action of the trustees in surrendering both title and possession to the brokers and their nominee. The guardian’s report ¡states — and it is conceded — that certain securities and cash are deposited with the brokers and that the securities are in the name of the brokers’ nominee. This transaction is not for the purpose of immediate sale, but represents the practice of the trustees, and it is defended on the ground that the will gives them authority to do so. As the guardian correctly points out, the will relates only to registration and no fair construction of the text confers authority to deposit the securities with the. nominee. If it were construed so to do, it would violate the settled public policy of this State. The objections of the guardian ad litem are sustained.
Neither the pleadings nor the briefs are directed to the right of the fiduciaries to register securities in the name of a nominee while the fiduciaries retain possession of such securities up to the time of sale. The court will not pass upon a question not presented or argued, though it calls attention to the public policy interpreted in Matter of Harris (supra).